**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X

ALVAREZ QUIZAR ROMUALDO individually and
on behalf of others similarly situated,

                        Plaintiff,

                -against-

M&Z CORPORATION (D/B/A FAMILY GROCERY
& DELI), NAJMA MOHAMED RAZA (A.K.A.
MOHAMED, ABBASALI RAZA and HABIB H. ALI,

                        Defendants.

-------------------------------------------------------------------X

**19-CV-5188**

**DECLARATION OF**
**CLELA ERRINGTON IN**
**SUPPORT OF**
**PLAINTIFF'S MOTION**
**FOR <u>DEFAULT</u>**
**<u>JUDGMENT</u>**

       Clela Errington, an attorney duly admitted to practice in New York and in this Court,

affirms on penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

       1.      I represent Plaintiff Alvarez Quizar Romualdo1 ("Plaintiff"), in this lawsuit for

unpaid wages, liquidated damages, and attorneys' fees under the FLSA and New York Labor Law

and regulations.

       2.      I submit this affirmation in support of Plaintiff's application for a default judgment

against Defendants M&Z Family Corporation (d/b/a Family Grocery and Grill), Najma Mohamed

Raza, and Habib H. Ali ("Defaulting Defendants") pursuant to Fed. R. Civ. P. 55(b)(2) and Local

Rule 55.2(b).

<u>Procedural History</u>

---

1 This office also represents plaintiff Boris Asarael Hernandez Lopez, who was Mr. Quizar's coworker at 104 Deli.
Mr. Hernandez Lopez, upon a review of his records, only recalls working for Appearing Defendants Jatin Patel and
Guru Krupa 104 Corporation, with whom he has fully settled his claims, and as such is not a part of this Motion for
Default Judgment.

3.      Plaintiff commenced this action by filing the Complaint (and associated documents) on September 11, 2019. A true and correct copy of the Complaint is attached hereto as Exhibit 1.

4.      This is an action for unpaid minimum and overtime wages, spread of hours pay, liquidated damages, interest, costs and attorneys' fees under the Fair Labor Standards Act (29 U.S.C. § 201 et seq., "the "FLSA") the New York Labor Law ("NYLL"), and associated rules and regulations. See Exhibits 1, generally, for description of the nature of the claims.

5.      The Court has subject matter jurisdiction of the Plaintiff's federal claims pursuant to 29 U.S.C. § 201 et seq. (FLSA) and 28 U.S.C. § 1331 (federal question), and jurisdiction over the New York state law claims (such as the NYLL) under 28 U.S.C. § 1367(a) (supplemental jurisdiction).  See Exhibit 1.

6.      An amended summons and copy of the Complaint were properly served on M&Z Family Corporation on November 22, 2019. A true and correct copy of the affidavit of service is attached hereto as Exhibit 2.

7.      An amended summons and copy of the Complaint were properly served on Habib H. Ali on November 21, 2019. A true and correct copy of the affidavit of service is attached hereto as Exhibit 3.

8.      A summons and copy of the Complaint were properly served on Najma Mohamed Raza on November 21, 2019. A true and correct copy of the affidavit of service is attached hereto as Exhibit 4.

9.      Defaulting Defendants did not answer or otherwise respond to the Complaint, and have failed to plead and/or appear in this case.

10. On February 19, 2020, Defendants Jatin Patel and Guru Krupa 104 Corporation ("Appearing Defendants") appeared by counsel. *See* Doc. No. 13.

11. On March 7, 2020, Appearing Defendants filed their Answer to the Complaint *See* Doc. No. 15.

12. Plaintiff and Appearing Defendants have since settled their claims.

13. Upon information and belief, Defaulting Defendants are neither infants nor incompetent persons nor in the active service of the United States military.

14. Plaintiff moved for entry of default on September 2, 2021. The Clerk of the Court then noted default against Defaulting Defendants on November 15, 2021 True and correct copies of the Clerk's Certificates of Default is attached hereto as Exhibits 5.

15. The affidavit of Alvarez Quizar Romualdo in support of this motion for default judgment is annexed as Exhibit 6.

Statement of Facts Supporting Entry of Judgment

16. As alleged in the Complaint and as stated in Plaintiff's affidavit, Defaulting Defendants operated two delis, one under the name 104 Deli located at 104-10 Atlantic Avenue, Ozone Park, New York 11416, and the other under the name Family Grocery and Deli located at 10727 Atlantic Avenue, Jamaica New York 11418. (Complaint ¶ 2 ; Romualdo Dec. ¶ 3).

17. Plaintiff is former employee of Defendants. (Complaint ¶ 1 ; Romualdo Dec. ¶ 3).

18. Default Defendants had the power to hire and fire Plaintiff, controlled Plaintiff's terms and conditions of employment, and determined the rate and method of Plaintiff's compensation. (Complaint ¶¶ 21, 23, 25; Romualdo Dec. ¶ 4).

19. Upon information and belief, the delis were sold to Appearing Defendants on or about January 14, 2019. (Romualdo Dec. ¶ 7)

20.     Plaintiff has since settled his claims against Appearing Defendants for damages incurred after January 14, 2019. (Romualdo Dec. ¶ 8)

Alvarez Quizar Romualdo

21.     Plaintiff Alvarez Quizar Romualdo ("Plaintiff") was employed by Defaulting Defendants as a grill man, food preparer, and general assistant from approximately January 2018 until on or about January 14, 2019  (Complaint ¶¶ 37-38; Romualdo Dec. ¶¶ 7- 8).

22.     Plaintiff's work did not require discretion or independent judgment.  (Complaint ¶ 40; Romualdo Dec. ¶ 9).

23.     From approximately January 2018 until on or about January 14, 2019, Plaintiff worked at 104 Deli from approximately 5:00 A.M. or 5:30 A.M until approximately 5:30 P.M. to 6:00 P.M., Mondays through Saturdays (typically 72 to 78 hours per week). (Complaint ¶ 42, Romualdo Dec. ¶

24.     For approximately four occasions throughout his employment, Plaintiff worked at the 104-10 Atlantic Avenue location from approximately 5:00 a.m. to 5:30 a.m. until on or about 5:30 p.m. to 6:00 p.m., Mondays through Saturdays and from approximately 7:00 a.m. until on or about 3:00 p.m., on Sunday (typically 80 to 86 hours per week). (Complaint ¶ 43, Romualdo Dec. ¶

25.     Throughout Plaintiff' entire employment, Defaulting Defendants paid him his wages in cash. (Complaint ¶ 45 ; Romualdo Dec. ¶ 12).

26.     From January 2018 until January 14, 2019, Defaulting Defendants paid Plaintiff a fixed salary of $650.00 per week. (Complaint ¶ 46 ; Romualdo Dec. ¶ 13).

27.     On five occasions throughout his employment, Plaintiff was paid $600 per week whenever the business was slow. (Complaint ¶ 58; Romualdo Dec. ¶ 14).

28.    For approximately three weeks, Plaintiff was not paid at all for his work. (Complaint; Romualdo Dec. ¶ 15).

29.    Defendants never granted Plaintiff Quizar any breaks or meal periods of any kind. (Complaint ¶ 51; Romualdo Dec. ¶ 16).

30.    Plaintiff Quizar was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked. (Complaint ¶ 52; Romualdo Dec. ¶ 18)

31.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Quizar regarding overtime and wages under the FLSA and NYLL. (Complaint ¶ 53; Romualdo Dec. ¶ 19)

32.    Defendants did not provide Plaintiff Quizar an accurate statement of wages, as required by NYLL 195(3). (Complaint ¶ 54; Romualdo Dec. ¶ 20)

33.    Defendants did not give any notice to Plaintiff Quizar, in English and in Spanish (Plaintiff Quizar's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1). (Complaint ¶ 55; Romualdo Dec. ¶ 21)

<u>Plaintiff is entitled to Judgment by Default</u>

34.    It is well settled that Defendants who fail to file an answer or otherwise move in respect to a complaint filed, are deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. <u>D.H. Blair & Co., Inc. v. Gottdiener</u>, 462 F.3d 95, 107 (2d Cir. 2006) ("Rule 55 tracks the ancient common law axiom that a default is an admission of all well-pleaded allegations against the defaulting party") (citation omitted).

35.    Defaulting Defendants have failed to file an answer or otherwise respond to the Complaint, despite the time to do so have expired.

36.     Thus, Plaintiff's allegations are unchallenged, and consequently the Complaint and declarations attached hereto establish Plaintiff's right to default judgment.

37.     Upon entry of a default, the court may award damages based upon evidence submitted through affidavits and exhibits, or by an evidentiary hearing. Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Foundation Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012). "While Rule 55(b)(2) permits the district court to conduct a hearing to determine damages, such a hearing is not mandatory." Id. "Together, 'Rule 55(b)(2) and relevant case law give district judges much discretion in determining when it is "necessary and proper" to hold an inquest on damages.'" Id. (quoting Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir. 1993)).

38.     Plaintiff maintains that the proof submitted herewith is sufficient on its own to obviate the need for a hearing on damages. Based on the evidence Plaintiff has put forward, damages, including back pay, liquidated damages, and prejudgment interest, should be awarded in the amount of $129,632.68, and attorneys' fees and costs should be awarded in the amount of $.

Plaintiff's Damages Calculation

39.     Annexed as Exhibit 7 is a chart setting out the damages Plaintiff is entitled to recover.

40.     In the damages chart, the Plaintiff's wage and hour damages (including overtime wage damages, spread of hours wage damages, liquidated damages, and interest) are calculated in segments of time, broken into "Pay Periods." Each pay period calculates the number of weeks in each period ("No. of Weeks in Pay Period"), and then based upon each of the Plaintiff's affidavits, lists the number of hours worked per week in each period ("Hours Per Week in Period). The applicable minimum wage data, and associated overtime rate, are included as applicable for each

6

pay period. Then there is a column for Paid Wages, the first column calculates the "regular rate of pay" for each period by dividing the amount actually paid each week to each Plaintiff (the "Credited Weekly Pay") for each period, then dividing that amount by the "Hours Per Week in Period"). The overtime rate is calculated using a 1.5 multiplier for time and a half overtime calculations later in the chart. The "Credited Weekly Pay" is the amount of money actually paid and is based upon the Plaintiff's affidavit. The information the number of days each week in that period for which the Plaintiff worked in excess of 10 hours per day is also included, and was therefore entitled to Spread of Hours Pay ("No. of SOH Days Per Wk in Period").

41.     Calculations within the Chart – The "Lawful Weekly Pay" column of the chart calculates what the Plaintiff should have been paid per week during each pay period. The actual formula used in this column is as follows:((greater of minimum wage or calculated base pay) * Hours Per Week up to 40) + ((greater time and a half rate) * (Hours Per Week over forty, if any)).

42.     The chart therefore automatically determines whether the effective calculated base rate of pay falls below the minimum wage, and if it does, it discards it. If it does not, it uses it for the subsequent calculations (as the Plaintiff is entitled to earn at least the minimum wage). The chart then automatically calculates what the hours should have been compensated at under the base rate of pay up to the first 40 hours of work per week, and then at time-and-a-half pay for any hours over 40. The Chart then subtracts the amount actually paid to Plaintiff (the "Credited Weekly Pay") and then derives the "Underpayment per Week." This number is then multiplied by the number of weeks in each period and derives the total damages due for unpaid minimum wages and overtime for each period ("Unpaid Wages & OT"). The Chart then applies the liquidated damages provisions of the NYLL to the "Unpaid Wages and OT" automatically in the "Liq. Damages on Wages &

OT" by 25% for damages occurring prior to April 9, 2011, if any, and 100% for any subsequent damages.

43.     The unpaid spread of hours pay ("Unpaid Spread of Hours (SOH) Pay") is derived by multiplying (the number of SOH days per week) * (the number of weeks per period) * (the minimum wage).  The liquidated damages on SOH pay are all calculated at the rate of 100%.

44.     The legal basis for the damages calculations within the chart are set out below.

<u>Back Pay</u>

45.     At all times relevant to the FLSA claims in this action, the minimum wage rate under the FLSA was $7.25 per hour.  Employees must be paid one-and-one half times their regular rate for each hour worked over forty (40) hours worked in a week.  29 U.S.C. § 207(a)(1). From 2011 to 2013, the minimum wage under New York law was the same as under the FLSA.

46.     The New York Minimum wage range increased to $8.00 per hour as of December 31, 2013; it further increased to $8.75 per hour as of December 31, 2014; it further increased to $9.00 per hour as of December 31, 2015; it further increased to $10.50 per hour on December 31, 2016 (for small businesses in New York City); it further increased to $12.00 per hour on December 31, 2017 (for small businesses in New York City); and it further increased to $13.00 per hour on December 31, 2018 (for small businesses in New York City).

47.     New York's rules on overtime explicitly incorporate those of the FLSA, and thus require pay at one-and-one-half times the regular normal rate for each hour over forty hours worked in a week. 12 N.Y.C.R.R. § 142-2.2.

48.     The onus is on the employer to maintain proper records of employees' hours worked, 29 U.S.C. § 211(c). "In a FLSA case, in the absence of rebuttal by [D]efendants, [P]laintiffs' recollection and estimates of hours worked are presumed to be correct." Zeng Liu v.

Jen Chu Fashion Corp, 2004 U.S. Dist. LEXIS 35, *8 (S.D.N.Y. 2004) (the court accepted the

Plaintiff's estimates of hours worked).

> An employee has carried out his burden [of production under the FLSA] if he proves that he has in fact performed work for which he was improperly compensated[,] and if he produces sufficient evidence to show the amount and extent of that work by just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate. *Id*. (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946), and other cases).

49.     Here, Plaintiff was not paid minimum wage and overtime compensation at the

lawful rate. Rather, Plaintiff received a weekly fixed salary that did not vary based on his hours

worked of $650 and or $600, regardless of whether he had worked in excess of ten hours in a day

or their scheduled hours. See Exhibit 7.

50.     Under the New York Hospitality Industry Wage Order, the regular rate for a

restaurant employee who is not paid on an hourly basis is determined by "dividing the employee's

total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or

the actual number of hours worked by that employee during the work week."  12 NYCRR §146-

3.5 (2013).

51.     Accordingly, to determine the Plaintiff's unpaid minimum wages, Plaintiff's

regular rate is determined by multiplying his hourly rate by his actual hours worked per week.

Then the regular rate is multiplied by 1.5 to determine the overtime rate the Plaintiff should have

received (if applicable).

52.     Plaintiff is owed $48,158.13 in unpaid minimum wages and overtime compensation. As of December 28, 2021, Plaintiff is entitled to $14,537.58 in prejudgment interest on wages and overtime. See Exhibit 7.

### Spread of Hours Pay

53.     Plaintiff is also entitled to "spread-of-hours" pay under the New York spread-of-hours regulation, which requires employers to pay workers for an additional hour of overtime-rate pay beyond their regular pay when the workday is more than ten (10) hours.  12 N.Y.C.R.R. § 146-1.6; Angamarca v. Pita Grill 7 Inc., 2012 U.S. Dist. LEXIS 108322, *16-17, 2012 WL 3578781 (S.D.N.Y. Aug. 2, 2012).

54.     As set out above, Plaintiff regularly worked more than ten hours per day.

55.     Plaintiff is entitled to $3,828.00 in unpaid spread of hours pay. As of December 28, 2021, Plaintiff is entitled to $1,198.56 in prejudgment interest on the unpaid spread of hours pay. See Exhibit 7.

### Wage Notice and Statement Violations

56.     Defendants never provided Plaintiff with annual notices of their wages, or a wage statement, as required by NYLL §§ 195(1), 195(3).

57.     Plaintiff is therefore entitled to statutory damages in the maximum amount of $5,000 under each section, for a total of $10,000.00.

### Liquidated Damages

58.     Liquidated damages of 100% of the unpaid wages under the FLSA are mandatory. See 29 U.S.C. § 216(b) ("Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional

equal amount as liquidated damages"). The employer can make this award discretionary, however, by a showing of good faith. 29 U.S.C. § 260. In the present matter, the Defaulting Defendants have defaulted. Consequently, they cannot meet this burden, and thus an award of liquidated damages is mandatory. Liquidated damages should be awarded in an amount equal to the unpaid minimum wages and overtime. 29 U.S.C. § 216(b).

59.    Likewise, under the NYLL, "an employee is also entitled to liquidated damages 'equal to one hundred percent of the total of such underpayments found to be due,' unless the employer proves a good faith basis for believing he or she was in compliance with the law." Wei, 2014 U.S. Dist. LEXIS 182325, *23 (quoting N.Y. Lab. Law § 663(1)).

60.    Given the uncontroverted evidence of Defaulting Defendant' lack of good faith Plaintiff is entitled by statute to liquidated damages under the New York Labor Law, computed at 25% of the unpaid minimum and overtime wages for the period of time prior to April 9, 2011 and 100% for any subsequent unpaid minimum and overtime wages.

61.    Plaintiff's total unpaid wages equal $48,158.13 all incurred after April 9th, 2011. Thus, he is entitled to 100% liquidated damages in the amount of $48,158.13. See Exhibit 7.

62.    Plaintiff's total unpaid spread of hours pay equal $3,828.00. He is entitled to 100% liquidated damages in the amount of $3,828.00. See Exhibit 7.

Attorneys' Fees and Costs

63.    The FLSA and the New York Labor Law both contain fee-shifting provisions for actions to recover unpaid wages. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the Plaintiff or Plaintiff, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); N.Y. Labor Law § 663(1) ("[An employee] may recover . . . costs and such reasonable attorney's fees as may be allowed by the court").

64. Plaintiff incurred costs and attorneys' fees in pursuing this action, and seeks an award of reasonable attorney's fees and costs.

65. The costs are a total of $1,130.40 including a filing fee of $400.00, fees associated with serving the Defendants with the summons and complaint.

66. A breakdown of attorneys' fees and costs incurred in filing the Complaint and seeking default, in the form of this firm's standard billing sheet is attached hereto as Exhibit 8.

67. Plaintiff's total attorneys fees are $17,019.80.

68. Plaintiff's attorneys are entitled to receive fees in the amount of $12,000.00 from the settlement reached with Appearing Defendants. (Dkt. No. 23).

69. Plaintiff is thus entitled to a $5,019.80 in attorney's fees.

70. The timekeepers on this matter are indicated by the following initials and have the following rates:

a. "MF" — Michael Faillace2, $450 per hour
b. "JA" – Joshua Androphy, $400 per hour
c. "CE" – Clela Errington - $350 per hour
d. "PL" – Paralegal work, $100 per hour

A brief biography of each attorney who performed billed work in this matter is as follows:

i. Michael Faillace is the Managing Member of Michael Faillace & Associates, P.C, and has been in practice since 1983. From 1983 to 2000, he was in-house Employment Counsel with International Business Machines Corporation (IBM). He taught employment discrimination as an Adjunct Professor at Fordham University School

---

2 No funds will be distributed to Mr. Faillace unless an application is made to the Court on his behalf, and order is entered to that effect.

of Law since 1992 and at Seton Hall University Law School from 1995 to 1998, and he is a nationally-renowned speaker and writer on employment law. He also is the author of the ADA, Disability Law Deskbook: The Americans with Disabilities Act in the Workplace, published by Practicing Law Institute (PLI), and other employment law publications and presentations.

ii.  Joshua S. Androphy is a former associate at Michael Faillace & Associates, P.C. He graduated from Columbia Law School in 2005. He practiced as an associate at Olshan Frome Wolosky LLP through 2012. He practiced as senior attorney with Michael Faillace & Associates, P.C. from December 2012 to July 2020, cultivating a background in labor and employment law, with a focus on FLSA litigation.

iii.  Clela A. Errington is an associate at CSM Legal, P.C. She is a 2012 graduate of New York University School of Law. She began her career at a series of small law firms focusing on labor and employment law, followed by several years providing litigation support to large law firms. She returned to litigation in 2019, joining the Jones Law Firm, P.C., joined Michael Faillace & Associates in 2020, and CSM Legal in 2021.

Conclusion

71.   Based on the above information and exhibits, Plaintiff asserts the record supports a judgment against the Defendant in favor of Plaintiff in the total amount of $129,632.68 for unpaid minimum and overtime wages and damages, spread of hour pay and damages, liquidated damages,

prejudgment interest and other claims. Prejudgment interest continues to run and should ultimately be computed through the date judgment is entered.

72.    Additionally, Plaintiff is entitled to $5,019.80 in attorneys' fees and costs.   See Exhibit 8.

73.    As shown herein, no inquest is necessary when, as in the present case, the Court has before it the proper measure of damages and evidence submitted by the Plaintiff that allows damages to be calculated with reasonable certainty.

74.    No part of the judgment sought has been paid.[3]

75.    Sufficient definitive information and documentation is provided such that the amount provided for in the proposed judgment can be calculated, based upon allegations contained in the Complaint, and supplemented by the Plaintiff's affidavit accompanying these motion papers.

76.    Plaintiff also makes a request for interest on the principal amount of the judgment not to exceed 9%, as stated above and in the damages calculations.

77.    Plaintiff also requests that the judgment provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4).

78.    The calculations made in arriving at the proposed judgment amount are set forth in both the explanation above, and in the damages chart itself.

79.    A proposed form of judgment is attached as Exhibit 9.

---

[3] Plaintiffs have settled their claims with the Appearing Defendants for damages accruing after January 14, 2019 for a total of $36,000.00. As Plaintiff Quizar is herein only seeking damages for damages accruing before that date, this settlement amount should not affect the amount awarded in default.

80.     For the reasons stated above and in the accompanying exhibits, the Plaintiff's

motion for a default judgment should be granted.

Dated: New York, New York
       January 13, 2022

                                        /s/Clela Errington
                                    Clela A. Errington, Esq.